# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CR. NO. 04-30056-01 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| FELIPE CIQUEIROS VISCARRA | * | MAGISTRATE JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion to Vacate, or Reduce Sentence filed by defendant Felipe Ciquerios Viscarra (Viscarra) (Docs. # 72, 75, 77). For reasons stated below, it is recommended that the motion be DENIED.

## BACKGROUND

On March 13, 2004, Salvador Araiza (Araiza), also known as Eddie Nelson Ruiz, was driving from Dallas to Atlanta when he was stopped for a traffic violation in West Monroe, Louisiana. After a search of Araiza's car revealed 13 packages of methamphetamine, Araiza agreed to assist law enforcement. Araiza called Guero Ciquerios (Guero), the person who had told Araiza to drive the car to Atlanta, and said that the transmission on the car was broken. Guero told Araiza to find a hotel for the night.

Araiza subsequently received a phone call from Viscarra, who told Araiza that he would come to West Monroe to help tow Araiza's car to a mechanic. Araiza was acquainted with Viscarra because Viscarra had previously met Araiza in Atlanta when Araiza delivered what he believed were documents and license plates.

Viscarra arrived in West Monroe on March 14, 2004. He parked a significant distance from Araiza's hotel and waited several hours before actually showing up at Araiza's hotel room.

The subsequent recorded conversation between the two men, which was conducted in Spanish, was translated, read, and submitted by the government to the jury as follows:

| | |
|---|---|
| Araiza: | You want, you want me to leave the gifts there, or what the story? |
| Viscarra: | Did you lock the damn doors? |
| Araiza: | Yes, here there are people constantly coming or leaving. You want me to leave the gifts there, or how are you going to do it with that shit? |
| Viscarra: | We're going to have to arrange it in my car. |
| Araiza: | We have to fix it. I thought that you were going to bring something else, another car to throw in - to throw in that luggage. |
| Viscarra: | They haven't told me anything. |
| Araiza: | No? Well, how are we going to do it? |
| Viscarra: | We bring a damn tow truck. |
| Araiza: | You know this area? |
| Viscarra: | No. |
| Araiza: | Son-of-a-bitch. You don't - you don't have any tools, nothing to - |
| Viscarra: | No, I don't know how, my friend. |
| Araiza: | Yeah, yeah. But what did that guy tell you? Will he want to - will he want you to take this s*** with you? Eh? Didn't he tell you? |
| Viscarra: | He didn't tell me. |

Tr. 91-92. At trial, a dispute arose over the accuracy of the translation, particularly with regard to Viscarra's alleged statement, "We're going to have to arrange it in my car." Araiza testified that the statement manifested Viscarra's intention "to change everything from that car to his car. Whatever it was inside the vehicle, I think he was going to - he was going to switch them."

2

Tr. 94. On cross-examination by Viscarra's attorney, Douglas Pire (Pire), Araiza testified that "arreglar" means both "to fix" and "to arrange" in Spanish. On direct examination by Pire, Viscarra testified that the statement in dispute was more properly translated as "We're going to have to fix the car." Tr.154.

On August 23, 2005, a jury found Viscarra guilty of conspiracy to distribute 50 grams or more of methamphetamine or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

On November 25, 2008, Viscarra filed the instant motion to vacate under 28 U.S.C. § 2255. (Docs. # 72, 75, 77). He currently asserts the following grounds for relief: (1) he was denied the effective assistance of counsel because Pire failed to call an expert who would introduce a competing English language translation of the Viscarra-Araiza conversation; (2) he was denied the effective assistance of counsel because Pire failed to request a proper limiting instruction regarding the government-submitted translation of the Viscarra-Araiza conversation; and (3) he was denied the effective assistance of counsel because Pire inadequately advised him as to the alternatives to a jury trial.[1]

**LAW AND ANALYSIS**

The Law of § 2255 Actions

Issues that a defendant can present in a motion filed under 28 U.S.C. § 2255 are limited. There are, essentially, four grounds upon which a federal prisoner may move to vacate, set aside, or

---

[1] Although Viscarra raised several other grounds for relief based on ineffective assistance of counsel in his motion to vacate, he ultimately conceded all but the three previously mentioned.

correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255; *United States v. Cates*, 952 F.2d 149, 151 (5th Cir. 1992). The scope of relief under § 2255 is consistent with that of the writ of habeas corpus. *Cates*, 952 F.2d at 151; *see also United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996).

Only cognizable under 28 U.S.C. § 2255 are jurisdictional and constitutional issues and in rare circumstances non-constitutional and non-jurisdictional errors, not raised on appeal, which could result in a "complete miscarriage of justice." *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998); *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995); *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

In *United States v. Vaughn*, the United States Court of Appeals for the Fifth Circuit stated:

> [r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that would not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *U.S. v. Capua*, 656 F.2d. 1033, 1037 (5th Cir. 1981). Non-constitutional claims that could have been raised on direct appeal but were not may not be asserted in a collateral proceeding.

*United States v. Vaughn*, 955 F.2d 367 (5th Cir. 1992).

Collateral review is fundamentally different from and may not replace a direct appeal. *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584 (1982); *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*). Thus, even if the issues are constitutional or jurisdictional, the defendant may be procedurally barred from raising them collaterally. A defendant may not raise an "issue [constitutional or jurisdictional in nature] for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994) (*citing Shaid*, 937 F.2d at 232); *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995). Of course, issues raised and disposed of on direct appeal are not subject to further review under section 2255. *See Segler*, 37 F.3d at 1134.

Even if a defendant cannot establish "cause" and "prejudice," he may still be entitled to relief under § 2255 if there is a constitutional error which would result in a complete miscarriage of justice. *Murray v. Carrier*, 477 U.S. 478, 495-6, 106 S.Ct. 2639, 2649 (1986); *Bousley v. United States*, 523 U.S. 614, 620-2, 118 S.Ct. 1604, 1610-1611 (1998); *United States v. Ward*, 55 F.3d 412, 414 (5th Cir. 1995); *Shaid*, 937 F.2d at 232; *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992); *United States v. Hicks*, 945 F.2d 107, 108 (5th Cir. 1991). Such a miscarriage of justice would result if the error caused the defendant to be convicted of a crime of which he is innocent. *Shaid*, 937 F.2d at 232.

<u>Ineffective Assistance of Counsel</u>

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2255. *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996); *United States v. Gipson*, 985 F. 2d 212 (5th Cir. 1993); *United States v. Navejar*, 963 F. 2d 732, 735 (5th Cir. 1992). Substandard advice of counsel rises to a constitutional violation only if the substandard conduct deprives the defendant of his

5

constitutional right to a fair trial or deprives the defendant of some other constitutional right. *Strickland v. Washington*, 466 U.S. 668, 686-7, 104 S.Ct. 2052, 2063-2064 (1984). To prevail on a claim of ineffective assistance of counsel, a defendant must show both (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that the ineffectiveness of counsel prejudiced him. *Id.*

If the defendant does not make a sufficient showing as to one section of the test, the other prong need not be considered. *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997). The parts of the test need not be analyzed in any particular order. *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997). Furthermore, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

In applying the first part of the *Strickland* test, a court should presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. *See*, *Strickland* at 689-690, 2065-2066. The defendant must show that the performance of counsel fell "outside the wide range of professionally competent assistance." *Strickland* at 690, 2066; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994).

To establish prejudice, the second prong, the defendant must demonstrate that the attorney's actions "were so serious as to render the proceedings unreliable and fundamentally unfair." *United States v. Saenz-Forero*, 27 F.3d 1016, 1019 (5th Cir. 1994); *Murray v. Maggio*, 736 F. 2d 279 (5th Cir. 1984). Unreliability and unfairness do not result "if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitled him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844 (1993); *see also, Mangum v. Hargett*,

67 F.3d 80, 84 (5th Cir. 1995). Accordingly, counsel cannot be ineffective for failing to raise a meritless claim, *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995), and prejudice generally exists only if the defendant demonstrates that he would have received less jail time. *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

*A. Counsel's Failure to Introduce a Competing Translation*

Viscarra contends that Pire was ineffective for failing to call an expert who would introduce a translation of the Viscarra-Araiza conversation to contradict the government's translation. As a result, Viscarra argues that Pire prevented him from being able to test the validity of the government's translation through the adversarial process. This argument, however, is unconvincing.

In *Bower v. Quarterman*, the petitioner claimed that he was denied the effective assistance of counsel because his attorney failed to call a ballistics expert to contradict the state's ballistics expert. *Bower v. Quarterman*, 497 F.3d 459, 470 (5th Cir. 2007). However, the Fifth Circuit found that "[u]nless a crucial and important legal issue rests on the reliability of scientific evidence . . . , counsel is not constitutionally required to seek out a contradictory expert so long as the decision not to call an expert is informed and based on a strategic decision." *Id.* at 471. Noting that the state's ballistics evidence was merely circumstantial, the court concluded that the petitioner was not denied the effective assistance of counsel because of the strength of the evidence against the petitioner and his attorney's "vigorous cross-examination" of the state's ballistics expert. *Id.*

As the validity of the government's translation was not a legal issue that rested on "the reliability of scientific evidence," Viscarra must show that Pire's decision not to call a contradictory expert was both uninformed and not based on a strategic decision in order to prevail. The record,

7

however, indicates that Viscarra cannot succeed on either ground.

Pire, who was retained by Viscarra's family to represent him, testified that he acquired a tape of the Viscarra-Araiza conversation and brought it to Showcase Productions in Dallas in order to remove background noise that made listening to the tape difficult. Hearing Tr. 40. In addition, two of Pire's assistants, who are native Spanish speakers as well as certified state translators in Texas, translated the Viscarra-Araiza conversation, and informed him of the multiple meanings of the word "arreglar." *Id.* at 40-43. Furthermore, Pire was an experienced criminal defense lawyer who had been involved in at least ten federal drug trials either as the lead attorney or second chair. *Id.* at 33. He made a strategic decision to test the validity of the government's translation through cross-examination of Araiza and Viscarra's direct testimony, rather than by calling an expert witness. *Id.* at 44. Pire testified that he did not hire an expert witness to produce a competing translation of the conversation because he did not want the expert, on cross-examination, to be asked about whether any of the other language in the Viscarra-Araiza conversation involved drug distribution. Id. at 44, 78.

Moreover, assuming *arguendo* that Pire's decision not to call a contradictory expert constituted deficient performance, Viscarra cannot demonstrate that he was consequently prejudiced for two reasons. First, Pire's vigorous cross-examination of Araiza (Tr. 127-29) and his skillful direct examination of Viscarra (Tr. 154-55) regarding the multiple meanings of the word "arreglar" would likely have had the same effect on the jury as calling an expert witness to testify to the multiple meanings of the word "arreglar." Second, this is a case where the evidence of the petitioner's guilt was "so extensive as to render harmless defense counsel's errors." *Soffar v. Dretke*, 368 F.3d 441, 478 (5th Cir. 2004). Besides Viscarra's own testimony that he was not referring to

8

drugs in his conversation with Araiza, he did not produce any other exonerating evidence. *See United States v. Viscarra*, 494 F.3d 490, 493 (5th Cir. 2007). Furthermore, at trial the government pointed to several facts that demonstrated Viscarra's guilt, including: (1) during the Viscarra-Araiza conversation, he seemed to understand several code words for drugs; (2) he parked his car far from Araiza's hotel and took a couple of hours to reach Araiza's hotel room; and (3) he had engaged in a similar exchange just months earlier. *Id.*

*B. Counsel's Failure to Request Limiting Instructions Regarding the Translation*

Viscarra next contends that he was denied the effective assistance of counsel because Pire failed to request limiting instructions, specifically Fifth Circuit Pattern Jury Instruction 1.42,[2] regarding the translation of the Viscarra-Araiza conversation that the government submitted to the jury. Specifically, Viscarra contends that Pire's decision not to request Jury Instruction 1.42 prevented Viscarra from reminding the jury that it was entitled to reject the government's

---

[2] Fifth Circuit Pattern Jury Instruction 1.42 reads as follows:

Exhibit _____ has been identified as a typewritten transcript [and partial translation from Spanish into English] of the oral conversation which can be heard on the tape recording received in evidence as Exhibit _____. The transcript also purports to identify the speakers engaged in such conversation.
I have admitted the transcript for the limited and secondary purpose of aiding you in following the content of the conversation as you listen to the tape recording, [particularly those portions spoken in Spanish] and also to aid you in identifying the speakers.
You are specifically instructed that whether the transcript correctly or incorrectly reflects the content of the conversation or the identity of the speakers is entirely for you to determine based upon your own evaluation of the testimony you have heard concerning the preparation of the transcript, and from your own examination of the transcript in relation to your hearing of the tape recording itself as the primary evidence of its own contents; and, if you should determine that the transcript is in any respect incorrect or unreliable, you should disregard it to that extent.

The Fifth Circuit Court of Appeals, 2001 Fifth Circuit Criminal Jury Instructions, Fifth Circuit Pattern Jury Instruction 1.42, *available at* http://www.lb5.uscourts.gov/juryinstructions//crim2001.htm.

translation.

"Strategic choices made after thorough investigation of law and facts are virtually unchallengeable . . . ." *Strickland*, 466 U.S. at 690-91. Furthermore, decisions to request and not to request jury instructions are strategic decisions. *See Martinez v. Quarterman*, 2006 U.S. Dist. LEXIS 53752, at *62 - 64 (W.D. Tex. 2006).

Pire's decision not to request Jury Instruction 1.42 did not constitute deficient performance. Pire was aware of Jury Instruction 1.42 and made a strategic decision not to request it because he did not want to draw the jury's attention to the government's translation, and believed the instruction would only serve to emphasize that one piece of evidence. Tr. 63, 46.

Furthermore, the portion of Jury Instruction 1.42 which Viscarra claims would have assisted his case was duplicative of other instructions regarding the evaluation of evidence, and Pire's decision not to request Jury Instruction 1.42 therefore could not have prejudiced Viscarra. At several points in the actual jury instructions, the court generally advised the jury members that they ultimately decided the credibility of the evidence. For example, the jury instructions provided that, "While you should consider only the evidence, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts which have been established by the evidence." Exh. 6 at 5. The jury instructions also told the jury, "your job is to think about the testimony of each witness you have heard and decide how much you believe of what each witness had to say." *Id.* at 7.[3] Thus,

---

[3] The jury instructions also told the jury, "The function of the lawyers is to point out those things that are most significant or most helpful to their side of the case, and in so doing, to call your attention to certain facts or inferences that might otherwise escape your notice. In the final analysis, however, it is your own recollection and interpretation of the evidence that controls in

although the jury members were never specifically told that they could disregard the government's translation of the Viscarra-Araiza conversation if they doubted its accuracy, they were specifically told that they could disregard unconvincing testimony. Thus, Pire's decision not to request Jury Instruction 1.42 did not prejudice Viscarra.

*C. Counsel's Failure to Adequately Explain the Alternatives to a Jury Trial*

Viscarra's final contention is that he would have pled guilty had Pire adequately advised him about the possibility of receiving a lower sentence if he were to plead guilty, the strength of the government's case, or Viscarra's potential eligibility for the safety-valve provision. However, Viscarra concedes that relief under 28 U.S.C. § 2255 is generally not granted for claims that counsel was ineffective for failing to advise the defendant about the positive and negative consequences of proceeding with a jury trial. *United States v. Faubion*, 19 F.3d 226, 228-29 (5th Cir. 1994) ("We underscore our hesitancy to impose the badge of deficiency on an attorney's measured judgment to go to trial instead of pleading guilty."). Viscarra nevertheless argues that Pire's inadequate explanation about the alternatives to a jury trial, in combination with Pire's other errors, constituted ineffective assistance of counsel.

This argument is unavailing. As the foregoing discussion indicates, Pire did not make any other errors. Pire's decisions not to introduce a competing transcript and not to request Jury Instruction 1.42 were informed strategic decisions. Thus, the general rule set forth in Faubion is controlling.

Furthermore, Pire's testimony at the 28 U.S.C. § 2255 hearing directly contradicted

---

the case." Exh. 6 at 4.

Viscarra's testimony on these matters. A necessary component of this review was an assessment of the consistency and credibility of Viscarra and Pire's testimony. Pire testified that he told Viscarra about the possibility of a lower sentence if he pled guilty and that he emphasized the strength of the government's case to Viscarra. Hearing Tr. 35-39. Pire specifically recalled talking to Viscarra regarding his options, reduction of sentence for acceptance of responsibility, and the strength of the government's case, including the weaknesses of Viscarra's claim that he was simply in West Monroe to fix the car of a mere acquaintance, particularly since he had driven all the way from Atlanta and had no mechanics tools with him. *Id.* Pire testified that he also pointed out the problem with Viscarra's conduct once he arrived in West Monroe, and the fact that a jury could easily infer that he was aware of the criminal activity and that he was looking for the police before approaching Araiza's hotel. *Id.* at 37-38. Pire also discussed with Viscarra the possibility of a safety valve in the absence of any prior criminal history. *Id.* at 39. According to Pire, Viscarra's response was, "If I plead guilty, they'll think I'm snitching." *Id.*

Given Pire's experience as a criminal defense attorney, and the strength of the government's case, it strains credulity to believe that he would not have informed his client of his options and the possible consequences thereof. In addition, his explanation for Viscarra's decision to proceed to trial is credible. The undersigned finds that Pire's version of events is believable, while Viscarra's is not.

## CONCLUSION

For the reasons stated above, it is recommended that defendant's Motion to Vacate be **DENIED.**

Under the provisions of 28 U.S.C. §636(b)(1)© and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written

objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 14th day of September, 2009.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE